IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA BAXTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 4606 |
| | ) | (No. 04 CR 371) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING BAXTER'S §2255 MOTION**

JAMES F. HOLDERMAN, Chief Judge:

Petitioner Laura Baxter ("Baxter"), on August 15, 2007, filed the pending Motion to

Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. §

2255, (Dkt. No. 1), seeking to have her two-year prison sentence vacated. This court imposed

that sentence after considering Baxter's presentence investigation report ("PSR") prepared by the

U.S. Probation Office, hearing from counsel, and hearing from Baxter, who had pled guilty

pursuant to a plea agreement (04 CR 371, Dkt. No. 41 ("Plea Agreement")) to a one-count

superceding U.S. Attorney's criminal information (04 CR 371, Dkt. No. 33 ("Superceding

Information")) charging her with obstructing and impeding the administration of the federal tax

laws in violation of 26 U.S.C. § 7212(a). The sentence was affirmed on appeal. *United States v.*

*Baxter*, 217 F. App'x 557, 561 (7th Cir. 2007), *cert. denied*, 550 U.S. 957 (2007).

Baxter asserts in her pending motion that her Sixth Amendment right to the effective

assistance of counsel was violated at both the plea bargaining and sentencing phases of her

criminal case when the defense attorneys she had retained "failed/refused to retain the services of

tax experts who would have been in a position to advise defense counsel that the government's 'tax loss' compilations and calculations were remarkably skewed." (Dkt. No. 1 at 5.)

On January 18, 2008, this court, after reviewing the briefing of Baxter's pending motion, ordered an evidentiary hearing to determine: (1) the reasons Baxter's attorneys failed to object to the $576,000 tax-loss amount used in sentencing Baxter; (2) the actions, if any, Baxter's attorneys took to investigate the appropriate calculation of the tax-loss amount; (3) whether a non-government tax expert would have concluded that the government's proffered $576,000 figure was improperly calculated or otherwise erroneous; and (4) whether Baxter's attorneys would have proven a tax-loss figure sufficiently lower than $576,000 to change the court's determination of Baxter's sentencing guidelines range, if they had the benefit of a tax expert's advice. (Dkt. No. 14 at 5.)

The evidentiary hearing was held in November and December of 2008. Now, after reviewing the exhibits and testimonial evidence presented at that 2008 evidentiary hearing ("2008 Hearing"), the court hereby grants Baxter's motion for the reasons stated below.

## BACKGROUND

On April 8, 2004, Baxter was indicted by a federal grand jury on eleven counts of criminal income tax violations. *United States v. Baxter*, 04 CR 371 (N.D. Ill.). Before being indicted, Baxter worked as a Certified Public Accountant with her own accounting practice in Frankfort, Illinois. Among her clients was a married couple, Bruce and Tammy Groen ("the Groens"). For several years, Baxter prepared the Groens' individual income tax returns, as well as tax returns for the Groens' several trusts, among them the Groen Asset Management Company. During the years pertinent to Baxter's criminal case, 1994 through 1999, the Groens

used a transaction accounting methodology involving a system of trusts purchased from the Aegis Company ("the Aegis Trust System"), which Baxter believed at the time to be lawful, but which was later shown by the government to be an illegal tax evasion scheme.

After plea negotiations between Baxter's counsel and the government's counsel, Baxter pled guilty to a one-count Superceding Information charging her with obstructing and impeding the administration of the federal tax laws in violation of 26 U.S.C. § 7212(a). When Baxter pled guilty on May 19, 2005, she admitted in her Plea Agreement and in open court that on October 29, 1997, she submitted a false document to Internal Revenue Service ("IRS") Revenue Agent Diane Jones, as well as other facts related to her criminal case.[1] In her Plea Agreement with the government, which was also signed by her attorney Keith Spielfogel, Baxter agreed for the purposes of calculating her sentencing guidelines range that "the offense involved a tax loss of more than $550,000 but less than $950,000." (Plea Agreement ¶ 6(a).) The government asserted, but Baxter disputed in the Plea Agreement, that Baxter was accountable for a tax loss of $5.1 million for sentencing purposes. The government contended, and Baxter denied in the Plea Agreement, that Baxter had criminally participated in a "longer and broader endeavor to obstruct and impede the administration of the internal revenue laws with respect to all of her clients who purchased systems of trusts from the Aegis Company." (*Id.* ¶ 5 at 5.)

---

[1] Revenue Agent Jones was performing an audit on the Groens' personal income tax returns for tax years 1993, 1994, and 1995 at the time Baxter submitted the falsified document. (Plea Agreement ¶ 5 at 2-4.) When Revenue Agent Jones requested documentation from Baxter to verify that the Groens had no taxable gain (or loss) in disposing of certain business assets, as reported on their 1995 personal income tax return, Baxter submitted a false document purporting to be page 1 of the Groen Asset Management Company's general journal for the year 1995. (*Id.* ¶ 5 at 3-4.) This document falsely showed that the relevant business assets were transferred or sold by the Groens to the Groen Asset Management Company at the Groens' adjusted basis, with no gain or loss. (*Id.*)

In the PSR, the probation officer recommended a total offense level of 17 resulting in a sentencing guidelines range of 24 to 30 months, based primarily on the tax-loss figure of $576,000 to which Baxter and Mr. Spielfogel purportedly had agreed in the Plea Agreement. (*Id.* ¶ 5 at 5.) The PSR rejected the $5.1 million tax-loss figure as relevant conduct attributable to Baxter for sentencing purposes.

On August 29, 2005, the government filed its objections to the probation officer's rejection of the $5.1 million relevant conduct tax-loss figure in calculating Baxter's sentencing guidelines range. (04 CR 371, Dkt. No. 36.) Understanding that in tax cases the magnitude of the tax loss for which the defendant is liable is a primary factor in determining the sentencing guidelines range,[2] the government sought to raise Baxter's sentencing guidelines range to a level above the statutory maximum sentence of thirty-six months in prison for her crime. Indeed, the government's post-plea contentions were that Baxter was responsible for a tax loss to the United States of $5.5 million.[3]

---

[2] The parties agreed that the 1995 U.S. Sentencing Guidelines Manual ("1995 Manual") would apply to Baxter's sentencing. (Plea Agreement ¶ 6.) The Application Note to the applicable offense guideline section titled "Background" on page 212 of the 1995 Manual states:

> Background: This guideline relies most heavily on the amount of loss that was the object of the offense. Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics. Furthermore, as the potential benefit from the offense increases, the sanction necessary to deter also increases.

[3] The government's position in the Plea Agreement was that Baxter was responsible for a tax loss of $5.1 million. After the court's September 27, 2005 hearing on the government's objections, but before the court issued its ruling on April 27, 2006, the government supplemented its position to increase the purported tax-loss figure to $5.5 million, due to the January 2006 conviction of Baxter's client, Michael Diesel, in the District of Kansas. (04 CR 371, Dkt. No. 48.) Baxter's response to the government's supplemental submission was filed on

On September 27, 2005, the court conducted an evidentiary hearing ("2005 Hearing") regarding the government's objections to the PSR's not recommending that this court adopt the government's relevant conduct tax-loss figure in excess of $5 million in sentencing Baxter. At the 2005 Hearing, the government had the burden of proving by a preponderance of the evidence any disputed facts that the government sought to use to enhance Baxter's sentence based upon a tax loss greater than that agreed to by Baxter and Mr. Spielfogel of $576,000. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005).

On April 27, 2006, the court, after full consideration of the evidence presented at the 2005 Hearing and the parties' submissions, issued a nine-page memorandum opinion finding, among other facts, that:

> The government has failed to meet its burden of showing by a preponderance of the evidence that Baxter sought to defraud the government through her use of the Aegis system so as to be accountable for the $5.5 million in tax loss as the government contends.

(04 CR 371, Dkt. No. 54 ("4/27/2006 Order") at 6.)

This court thereafter, for the purpose of sentencing Baxter, accepted without further question the tax-loss amount of $576,000 to which Baxter and Mr. Spielfogel had agreed in the Plea Agreement. The court believed at the time, as stated in the court's April 27, 2006 opinion, that this tax-loss amount was the tax loss "resulting from Baxter's obstruction of the audit." (*Id.* at 6-7.) The court did not understand that the $576,000 agreed-upon tax-loss figure was a part of the over $5 million in tax loss which the government had failed to prove by a preponderance of the evidence Baxter knew was illegal at the time of her crime in October 1997.

_____

April 17, 2006. (04 CR 371, Dkt. No. 50.) In that filing, Baxter continued to steadfastly deny that she knew at that time that the Aegis Trust System was illegal.

On May 24, 2006, the court sentenced Baxter to twenty-four months in the custody of the Bureau of Prisons, which was the low-end of the sentencing guidelines range calculated on a $576,000 tax loss. As stated earlier, Baxter appealed, and on March 1, 2007, Baxter's 24-month sentence was affirmed. *Baxter*, 217 F. App'x at 561.

On August 15, 2007, Baxter filed this case pursuant to 28 U.S.C. §2255 and argued that the $576,000 tax-loss figure stated in her Plea Agreement, and relied upon by this court at her sentencing, was erroneous. She contended also that both of her criminal defense attorneys, Mr. Keith Spielfogel and Mr. James Montgomery, during plea negotiations and at sentencing, were constitutionally ineffective in violation of Baxter's Sixth Amendment rights, because they failed to retain a tax expert to ascertain the correct amount of tax loss attributable to Baxter's criminal conduct and had failed to evaluate the correct tax ramifications of Baxter's criminal conduct for sentencing purposes.

Prior to Mr. Spielfogel's and Mr. Montgomery's appearances before this court on behalf of Baxter in the underlying criminal case, 04 CR 371, they each had appeared in cases before this court numerous times. This court considered, and still considers, them to be very good attorneys. Mr. Spielfogel had previously prevailed in his defense of another tax preparer in a criminal jury trial before this court, and Mr. Montgomery, who has a well-deserved national reputation as an outstanding attorney, had always previously been excellent in his representation of clients before this court.

At the 2008 Hearing, Mr. Montgomery, in an act that underscores his high professionalism, conceded that in hindsight his representation of Baxter was in essence constitutionally deficient as to the $576,000 tax-loss figure agreed to in the Plea Agreement and

at Baxter's 2006 sentencing. Mr. Spielfogel, however, denied at the 2008 Hearing that his representation of Baxter was constitutionally deficient as to the $576,000 tax-loss figure to which he had agreed in the Plea Agreement and at Baxter's sentencing.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, the court is authorized to vacate Baxter's sentence and resentence her if the court finds that Baxter's constitutional rights were violated. The Sixth Amendment guarantees the right to counsel at all "critical stages" of a criminal prosecution. *United States v. Wade*, 388 U.S. 218, 224 (1967). The government does not dispute that both plea proceedings and sentencing proceedings are critical stages of a criminal prosecution, at which a defendant is entitled to the effective assistance of counsel. *Van Patten v. Deppisch*, 434 F.3d 1038, 1043 (7th Cir. 2006) (plea proceedings), *rev'd on other grounds*, 128 S. Ct. 743, 747 (Jan. 7, 2008); *Jackson v. Miller*, 260 F.3d 769, 775 (7th Cir. 2001) (sentencing).

To demonstrate that she was denied her constitutional right to the effective assistance of counsel, Baxter must show both that: (1) her attorneys' performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for her attorneys' errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 695 (1984). "*Strickland*'s 'reasonable probability' language does not require a petitioner [such as Baxter] to meet a preponderance of the evidence threshold, but it does require a petitioner to show 'a probability sufficient to undermine confidence in the outcome.'" *Porter v. Gramley*, 122 F.3d 351 (7th Cir. 1997) (quoting *Strickland*, 466 U.S. at 694).

## ANALYSIS

Baxter's criminal defense attorneys' performance and any resulting prejudice must be analyzed as to each of the two critical stages of Baxter's criminal case, plea bargaining and sentencing, about which Baxter complains in her §2255 motion.

## I.      Performance

In the context of negotiating and reaching a plea agreement for a client charged with criminal conduct, a reasonably competent attorney is expected to (1) attempt to learn all of the facts of the case, (2) analyze the applicable law to make an estimate of the likely sentence; and (3) communicate the result of that analysis to his or her client. *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007).

It is undisputed that Baxter's criminal defense counsel, for purposes of learning the facts and analyzing the applicable law to make an estimate of Baxter's likely sentence, did not retain a criminal tax expert to critique or explain the $576,000 tax-loss amount that was ultimately stated in the Plea Agreement and used by this court in the 2006 sentencing of Baxter.  It is clear from Mr. Spielfogel's testimony at the 2008 Hearing that, for purposes of the Plea Agreement and sentencing, he believed there was no need to obtain a tax expert as to the $576,000 tax-loss amount.  It is also clear that he adopted the government's tax-loss theory that the $576,000 tax-loss amount was attributable to Baxter's October 1997 crime.

The key question under the *Strickland* performance prong is:  Did Mr. Spielfogel's conduct, in forming his opinion that Baxter was responsible for the $576,000 tax loss at the plea bargaining stage without obtaining the advice and assistance of a criminal tax expert on that subject, fall below the objective standard of reasonableness?

To answer that question, the court will look at each of the objective standards of performance the Seventh Circuit has articulated that a reasonably competent attorney should follow in the context of the plea bargaining stage on behalf of a criminal defendant. *Julian*, 495 F.3d at 495.

### 1.      Attempting to Learn All of the Facts

The court begins its analysis by looking at Mr. Spielfogel's conduct with regard to the first objective standard of an attorney's performance during plea bargaining identified by the Seventh Circuit: "attempt to learn all the facts of the case." *Julian*, 495 F.3d at 495.  On the whole, it appears that Mr. Spielfogel was aware of the following relevant facts at the time of Baxter's Plea Agreement: (1) that, on October 29, 1997, Baxter submitted a falsified document to an IRS auditor designed to delay, frustrate, obstruct, and impede the audit of Bruce Groen's individual income tax return for the calendar year 1995; (2) that Baxter denied participating in a larger endeavor to obstruct and impede the administration of the internal revenue laws with respect to all of her clients who had purchased systems of trusts from the Aegis Company; (3) that Baxter denied knowing at the time she submitted the falsified document that the Aegis Trust System was illegal; (4) that the $576,000 tax-loss figure was based on the tax loss caused by the Groens' use of the Aegis Trust System in tax years 1994, 1995, 1996, 1997, 1998, and 1999; and (5) that the Groens' 1997, 1998, and 1999 tax returns had not yet been filed at the time Baxter submitted the falsified document to the IRS auditor.

Mr. Spielfogel appears to have engaged in sufficient efforts to learn the facts relevant to Baxter's plea, and Baxter directs the court to no additional facts of which Mr. Spielfogel should have been aware before advising Baxter to accept the Plea Agreement that included the $576,000

tax loss and an agreed sentencing guidelines calculation based on the $576,000 tax-loss figure. (04 CR 371, Dkt. No. 41.)  Rather, Baxter's main argument is that Mr. Spielfogel should have engaged the services of a criminal tax expert to assist him in *evaluating* these facts in light of the applicable sentencing provisions.  In other words, Baxter argues that Mr. Spielfogel failed to properly analyze the applicable law to make an estimate of Baxter's likely sentence—the second objective standard of performance set forth in *Julian*.

### 2. Analyzing the Law to Make an Estimate of the Likely Sentence

To apply the sentencing guidelines, the court was required to first determine the appropriate base offense level according to the applicable offense guideline section.  *See* 1995 Manual §1B1.1(a)-(b).  As discussed above, in the context of offenses involving fraudulent or false returns, statements, or other documents, the amount of tax loss is an important factor in computing the appropriate base offense level.  Specifically, §2T1.1(a) directs the court to use either (1) the base offense level "from §2T4.1 (Tax Table) corresponding to the tax loss," or (2) a base offense level of 6, "if there is no tax loss."  1995 Manual §2T1.1(a).

Section 2T1.1(c) of the 1995 Manual, on page 209, provides special instructions regarding the meaning of tax loss and states:

> (c)　　Special Instructions
>
> 　　For the purposes of this guideline –
>
> 　　(1)　　If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (<u>i.e.</u>, the loss that would have resulted had the offense been successfully completed).

1995 Manual §2T1.1(c).

The Seventh Circuit last year reiterated that,

10

Amount of [tax] loss must be determined "on the basis of the conduct of conviction and relevant conduct." *United States v. Frith*, 461 F.3d 914, 917 (7th Cir. 2006). "[R]elevant conduct must be criminal or unlawful conduct...." *Id.* The government has the burden of proving losses attributable to relevant conduct by a preponderance of the evidence. *Id.*

*United States v. Schroeder*, 536 F.3d 746, 752 (7th Cir. 2008); *see also* 1995 Manual §1B1.1, Application Note 1(l) ("'Offense' means the offense of conviction and all relevant conduct").

In this court's April 27, 2006 opinion in Baxter's criminal case, the court rejected the government's argument that the tax loss attributable to the Aegis Trust System should be included as relevant conduct in Baxter's sentencing guidelines calculation, stating:

There is no question Baxter is guilty of the offense to which she plead guilty, submitting a false document to the IRS to obstruct an IRS audit. But based on the evidence presented at the [2005] hearing and the court has reviewed, the court cannot say that the government has proven by a preponderance of the evidence that Baxter knew at the time of her offense the illegality of the Aegis system. The government has failed to meet its burden of showing by a preponderance of the evidence that Baxter sought to defraud the government through her use of the Aegis system so as to be accountable for the $5.5 million in tax loss as the government contends.

(4/27/2006 Order at 6.)

With only the "conduct of conviction," *Schroeder*, 536 F.3d at 752, remaining for purposes of considering the $576,000 tax loss in sentencing Baxter, this court went on to state, "Therefore, this court accepts the tax loss calculated by the probation officer of $576,000 resulting from Baxter's obstruction of the audit." (*Id.* at 6-7.) At the time this court made that statement, it did not understand that the $576,000 was a part of the $5.5 million of tax loss for which the court had found Baxter not liable. No counsel sought to correct this court's erroneous understanding on that point until Baxter's §2255 motion.

Mr. Spielfogel confirmed at the 2008 Hearing that he believed Baxter's conduct of conviction encompassed the $576,000 tax loss related to the Groens' use of the Aegis Trust System because "she had obstructed the audit which prevented the discovery of the use of the trust system there." (2008 Hearing Tr. 263:9-13.) What Mr. Spielfogel seems to have done was to accept the government's position that Baxter was responsible for a $576,000 tax loss without analyzing the relationship between Baxter's conduct of conviction and the appropriate tax loss attributable to such conduct. The Sixth Amendment requires more of a criminal defense attorney. Mr. Spielfogel was required to undertake "a good faith analysis of all the relevant facts and applicable legal principles." *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003) (quoting *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). Among other things, this means independently analyzing the tax loss attributable to Baxter's conduct of conviction pursuant to the applicable sentencing provisions. If Mr. Spielfogel was unwilling or unable to perform this analysis, he had a duty to engage the services of a criminal tax expert who would do so.

Mr. Spielfogel testified that he believes that Max Wayman, the criminal tax expert retained by Baxter for purposes of her §2255 motion, "does not understand the difference between relevant conduct and what the actual loss was in the case." (2008 Hearing Tr. 276:15-17.) It was Mr. Spielfogel, however, who perhaps misunderstood the intricacies of the tax-loss analysis as applied to Baxter's case because he did not have the benefit of a non-government criminal tax expert.

Baxter's Plea Agreement explicitly limited her conduct of conviction to her impeding the IRS audit of Bruce Groen's 1995 individual 1040 tax return, as alleged in paragraph 2(b) on page 2 of the Superceding Information. Paragraph 2(b) stated in pertinent part that Baxter,

"[D]id corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by:

> b.      On or about October 29, 1997, submitting a falsified document to an Internal Revenue Service auditor designed to delay, frustrate, obstruct, and impede the audit of an Income Tax Return (Form 1040) she had filed or caused to be filed for calendar year 1995[.]

(Superceding Information ¶ 2(b).)  The second full paragraph on page 5 of the Plea Agreement

made it clear that it was *only* paragraph 2(b) of the Superceding Information that was the conduct

of conviction in Baxter's criminal case.  That Plea Agreement paragraph states in full:

> It is the government's position that defendant's obstruction of the taxpayers' audit, as charged in paragraph 2(b) of Count One of the Superseding information and as set forth in more detail above, was part of defendant's participation in a longer and broader endeavor to obstruct and impede the administration of the internal revenue laws with respect to all of her clients who had purchased systems of trusts from the Aegis Company.  This larger endeavor is described in paragraph 2(a) of Count One of the Superseding Information.  Defendant denies that she participated in this larger endeavor to obstruct and impede the administration of the internal revenue laws, but she admits that she violated Title 26, United States Code, Section 7212(a) as charged in paragraph 2(b) of Count One of the Superseding Information.

(Plea Agreement ¶ 5 at 5.)

The Seventh Circuit spoke on the §2T1.1(c)(1) definition of "tax loss" in *United States v.*

*Chavin*, 316 F.3d 666 (7th Cir. 2002).  There, the government contended "that 'tax loss' refers to

the amount of loss that the defendant *attempted* or *intended* to create through his tax offense."

*Id*. at 677 (emphasis in original).  The Seventh Circuit held:

> It is apparent from the definition of "tax loss" provided in the guidelines that the government has the correct position.  The guidelines state that "tax loss is the total amount of loss that was the object of the offense." [U.S.S.G.] § 2T1.1(c)(1). We take the phrase "the object of the offense" to mean that the *attempted* or *intended* loss,  rather than the *actual* loss to the government, is the proper basis of the tax-loss figure.

*Id.* (emphasis in original). At no point during her plea negotiations or sentencing did Baxter acknowledge intending any tax-loss amount attributable to her clients' use of the Aegis Trust System. Moreover, both tax experts at the 2008 Hearing, Baxter's expert Wayman and the government's expert Michael Welch, agreed that Baxter's October 1997 conduct of conviction did not "create" the $576,000 Groen tax loss; rather, the $576,000 Groen tax loss was created by the Groens' use of the Aegis Trust System. (2008 Hearing Tr. 433-34, 799-800.)

Proceeding without the aid of such expert advice, Mr. Spielfogel merely assumed that the full $576,000 tax-loss amount resulting from the Groens' use of the Aegis Trust System was attributable to Baxter's conduct of conviction. That conclusion, however, on proper analysis was not correct. At the time of her Plea Agreement, Baxter contested the factual basis for the tax-loss amount of $5.1 million, which represented the tax loss allegedly caused by all of Baxter's clients who used the Aegis Trust System. This $5.1 million figure *included* the $576,000 attributable to the Groens' use of the Aegis Trust System. It was objectively unreasonable for Mr. Spielfogel to agree during the plea negotiations that there was a factual basis for the $576,000 tax-loss amount, but no factual basis for the $5.1 million tax-loss amount. Both amounts were based on the use of the Aegis Trust System by Baxter's clients. If Baxter did not wilfully and knowingly engage in the unlawful use of the Aegis Trust System, as argued by Mr. Spielfogel at the 2005 Hearing and as found by this court in its April 27, 2006 opinion, the government's factual predicate for attributing the tax loss amount of $576,000 to Baxter did not exist. By accepting the government's assertion that the $576,000 was attributable to Baxter's crime of conviction without performing an independent analysis of the relevant sentencing provisions, Mr. Spielfogel misled both his client and the court and "failed to engage in the type

of good-faith analysis of the relevant facts and applicable legal principles" that is required of constitutionally effective counsel.  *Moore*, 348 F.3d at 242.

At the 2008 Hearing, Wayman, whose expertise regarding tax loss was not disputed by the government, (2008 Hearing Tr. 385), testified to several mitigating facts demonstrating deficiencies in the government's theory, including that the $576,000 tax-loss amount was not caused or created by the false document submitted by Baxter to IRS Revenue Agent Jones on October 29, 1997.  (2008 Hearing Tr. 392-95, 434.)  Wayman also testified that the "false document had nothing to do with tax assessments resulting from the Aegis trust system."  (2008 Hearing Tr. 392:7-11.)

Wayman also testified that the $576,000 tax-loss figure was included in the $5.1 million tax loss, for which this court had found, in the court's April 27, 2006 opinion, Baxter was not criminally responsible.  (2008 Hearing Tr. 394.)

Wayman further testified that the impact of Baxter's submission of the false document to IRS Revenue Agent Jones on October 29, 1997 was $22,853 in tax loss.  In other words, Wayman testified that he determined $22,853 of additional tax would have been assessed to the Groens for 1995 had Baxter submitted the correct document to Revenue Agent Jones on October 29, 1997.  (2008 Hearing Tr. 395-98.)

Comparing the agreed $576,000 tax-loss amount with the $22,853 tax-loss amount to which criminal tax expert Wayman testified, the sentencing guidelines calculations for Baxter would be as follows:

| $576,737 Tax Loss | | $22,853 Tax Loss | |
|---|---|---|---|
| Offense Level | 18 §2T4.1(M) | Offense Level | 11 §2T4.1(F) |
| Special Skill | +2 §2T1.1(b)(2) | Special Skill | +2 §2T1.1(b)(2) |
| Timely Acceptance | -3 §§3E1.1(a) + (b) | Timely Acceptance | -2 §§3E1.1(a) |
| Total Offense Level | 17 | Total Offense Level | 11 |

Range 24 - 30 months                                 Range 8 - 14 months

Wayman further testified at the 2008 Hearing to other facts and provided additional opinions as to alternate tax-loss amounts that had not been previously presented by Baxter's criminal defense attorneys in mitigation and contravention to the $576,000 tax-loss figure. One alternative was based on the fact that the Groens' 1997, 1998, and 1999 tax returns had not yet been filed when Baxter, on October 29, 1997, submitted the false document to Revenue Agent Jones. (2008 Hearing Tr. 404.) When Baxter did file those subsequent returns, she believed them to be lawful. The government's breakdown by year of the $576,000 criminal tax-loss figure for the Groens' tax returns was as follows:

| Year | Tax Loss |
|---|---|
| 1994 | 13,503 |
| 1995 | 61,066 |
| 1996 | 111,760 |
| 1997 | 68,858 |
| 1998 | 112,589 |
| 1999 | 208,961 |
| Total | $576,737 |

Had Mr. Spielfogel obtained the advice of a competent criminal tax expert, such as Wayman, Mr. Spielfogel possibly could have asserted in the plea negotiations that Baxter's §7212(a) obstruction crime on October 29, 1997 did not make Baxter accountable for criminal tax loss on the Groens' tax returns caused by the Aegis Trust System because, when she prepared those returns for the Groens, Baxter thought the Aegis Trust System and the Groens' returns were lawful. By doing so, Baxter's defense counsel may have been able to reduce a

substantial part, if not all, of the purported $576,000 tax-loss liability. In other words, Baxter's criminal defense attorneys could have argued that, although the "actual" tax loss to the government from the filing of the Groens' 1994 through 1999 tax returns was $576,000, the tax loss Baxter "attempted or intended," *Chavin*, 316 F.3d at 677, by her crime on October 29, 1997 was substantially less than $576,000. To have "intended" a future criminal tax loss resulting from the Aegis Trust System, Baxter would have had to have known on October 29, 1997, that the Aegis Trust System was a criminal scheme. She did not. As found by the court in its April 27, 2006 order, the government failed to prove by a preponderance of the evidence that Baxter knew the Aegis Trust System was a criminal tax scheme at the time she committed her crime of conviction.

If one were to back out the $390,408 tax loss resulting from the Groens' use of the Aegis Trust System for 1997, 1998, and 1999, the criminal tax-loss total is $186,329. When the effect of the two purported tax-loss figures is compared, Baxter's sentencing guideline calculations are as follows:

| $576,737 Tax Loss | | | $186,329 Tax Loss | |
|---|---|---|---|---|
| Offense Level | 18 §2T4.1(M) | | Offense Level | 15 §2T4.1(J) |
| Special Skill | +2 §2T1.1(b)(2) | | Special Skill | +2 §2T1.1(b)(2) |
| Timely Acceptance | -3 §§3E1.1(a) + (b) | | Timely Acceptance | -3 §§3E1.1(a) + (b) |
| Total Offense Level | 17 | | Total Offense Level | 14 |
| | | | | |
| Range 24 - 30 months | | | Range 14 - 21 months | |

Mr. Spielfogel testified that he would not have changed his recommendation to Baxter even with Wayman's expert report. (2008 Hearing Tr. 276.) Mr. Spielfogel also testified on redirect by Assistant U.S. Attorney Stephen Heinze as follows:

> Q.      Was it, in fact, your understanding that there were -- there
> was a separate basis, *independent of what she believed*

17

> *about the validity of the trust system*, for her being held
> accountable for that $576,000?

A.     Absolutely.

Q.     Okay.  And that was due to the obstruction, is that correct?

A.     That's correct.

(2008 Hearing Tr. 313:8-15 (emphasis added).)

Mr. Spielfogel emphatically accepted without question the premise that Baxter,
independent of her good faith belief in the Aegis Trust System's legality, was criminally
accountable for all the years, both past and future, she prepared the Groens' tax returns while
believing the Aegis Trust System was legal, because she had submitted a false document in
connection with the audit of Bruce Groen's 1995 individual tax return.  This premise was
contradicted by Wayman's testimony.  (2008 Hearing Tr. 392-95, 434.)  As demonstrated by Mr.
Spielfogel's testimony, Baxter's counsel was in need of non-government expert tax advice in
analyzing and calculating Baxter's potential sentence.

### 3.     Communicating the Results of the Analysis to the Client

The third requirement at the plea bargaining stage is for the lawyer to "communicate the
result of that [lawyer's] analysis," *Julian*, 495 F.3d at 495, to the client.  The essence of the
communication by Mr. Spielfogel to Baxter of his analysis was to accept the government's figure
of $576,000 of criminal tax loss used in the Plea Agreement.  Mr. Spielfogel adopted the
government's theory and did not analyze the tax loss beyond having Baxter check "the numbers"
of the tax loss created by the Groens' use of the Aegis Trust System.  (2008 Hearing Tr. at 254-
55.)  However, when Baxter expressed surprise that the tax loss attributable to the falsified

18

document was as high as $576,000, Mr. Spielfogel told her only that "it is what it is." (2008 Hearing Tr. 257.)

"A defendant can prove that his attorney's performance was deficient if he shows that his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996). The court finds that Baxter has made such a showing in this case.

Defense counsel in criminal tax cases need not always retain a tax expert to assist, but in Baxter's criminal case the failure of defense counsel to retain an independent tax expert caused the performance of Baxter's criminal defense counsel to fall below the *Strickland* objective standard of reasonableness with regard to the critical plea bargaining stage of Baxter's criminal case. The tax-loss question as it relates to Baxter was sufficiently complicated so as to require expert assistance. Objectively reasonable attorneys in Baxter's criminal defense attorney's position would have retained a non-government criminal tax expert and obtained that tax expert's advice before reaching a plea bargain with the government, especially because Baxter believed at the time she prepared the Groen's tax returns that the Aegis Trust System tax loss generated on all of the Groens' tax returns was lawful.

It should be noted that when Baxter learned, after preparing the Groens' 1999 taxes, that those Aegis Trust System transactions in which the Groens had engaged were not lawful, she acknowledged her mistaken belief and attempted to correct her error by cooperating with the IRS to determine the magnitude of the amount civilly owed by the Groens. The Groens paid the back taxes, interest, and civil penalties resulting from their use of the Aegis Trust System. The

Groens were not criminally charged, presumably because they had also mistakenly believed the Aegis Trust System was lawful.  Typically, people are not criminally punished for their mistaken beliefs.

The Supreme Court in *Strickland* has advised that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.        Yet, even "applying a heavy measure of deference to counsel's judgments," as required by *Strickland*, the court finds that Mr. Spielfogel's decision not to retain a criminal tax expert for the purposes of assisting him in analyzing the appropriateness of the government's theory and the other circumstances with regard to negotiating the Plea Agreement for Baxter in her criminal case fell below the objective standard of reasonableness for counsel at the critical plea agreement stage of Baxter's criminal case.

## II.    Prejudice

The court now turns to the second of the two *Strickland* requirements:  prejudice.  To establish prejudice in the context of this case, Baxter must demonstrate "a reasonable probability that, but for counsel[s'] error," *Moore*, 348 F.3d at 241, Baxter would not have accepted the $576,000 tax loss as she did.  Because Baxter's ineffective assistance of counsel claim is, in essence, a failure to investigate, Baxter must establish "that the expected results of further investigation 'would have led counsel to change his recommendation as to the plea.'" *Jacobson v. United States*, 258 F. App'x 45, 48 (7th Cir. 2007) (quoting *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004)).  In other words, "to succeed on [an ineffective assistance of counsel] claim, a defendant must show that advice on which his plea was predicated not only

'was not within the range of competence demanded of attorneys in criminal cases,' but also that there is a 'reasonable probability that, but for counsel's unprofessional error, the result . . . would have been different.'" *United States v. Malave*, 22 F.3d 145, 147 (7th Cir. 1994) (citations omitted). Baxter bears the burden of proving prejudice through evidence "sufficient to undermine confidence in the outcome" of the plea bargaining and sentencing proceedings. *Strickland*, 466 U.S. at 694.

In the "Government's Answer to Motion Under 28 U.S.C. §2255," the government properly asserts that Baxter is bound by her under-oath admissions at her guilty plea hearing and in her Plea Agreement. (Dkt. No. 8 at 7-10 (citing numerous cases).) "[S]tatements made by the defendant at an acceptance-of-plea hearing" are afforded a "presumption of verity." *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995) (citing *United States v. Redig*, 27 F.3d 277, 280 (7th Cir. 1994)). "The presumption of verity is overcome only if the defendant 'satisfies a heavy burden of persuasion.'" *Id.* (quoting *Malave*, 22 F.3d 145 at 148).

The critical stage of sentencing in Baxter's criminal case was, of course, infected by the failure to have a non-government tax expert assist at the plea bargaining stage in preparation for the guilty plea hearing. However, at no point in Baxter's plea colloquy, Plea Agreement, or in her submission to the court in the PSR, did Baxter admit that by submitting the false document to Revenue Agent Jones to end the 1997 audit of the 1995 Groen tax return that she, Baxter, knowingly "attempted or intended," *Chavin*, 316 F.3d at 677, to cover-up an illegal tax scheme. Rather, Baxter agreed with the government at her guilty plea hearing "that she submitted that false document to the IRS for the purpose of ending that audit without any further inquiry into a possible gain by the taxpayers or any further request for documents by the auditor." (5/19/2005

Plea Hearing Tr. 33-34.) Baxter's admission in her Plea Agreement that "the tax loss related to the [Groens'] tax returns for [tax years 1994 through 1999] amounted to more than $576,000" (Plea Agreement ¶ 5 at 5) refers to the *actual* loss caused by the Groens' use of the Aegis Trust System and not the loss that Baxter "attempted or intended," *Chavin*, 316 F.3d at 677, through her knowing participation in the illegal Aegis Trust System scheme. Similarly, Baxter's remark in 1999 to an undercover IRS Agent that "I cut them off before they got that far," (2008 Hearing, Gov't Ex. 10), is not an admission acknowledging the illegality of the Aegis Trust System. It is, however, proof of the crime which Baxter acknowledged by her guilty plea to paragraph 2(b) of the one-count Superceding Information.

Consequently, Baxter never admitted that she "attempted or intended," *Chavin*, 316 F.3d at 677, any tax loss by her §7212(a) crime or that she "attempted or intended," *id.*, to hide an illegal tax scheme. In fact, Baxter consistently denied any such attempt or intention related to anything beyond the 1995 tax return that was the subject of the 1997 audit. When the government was given the opportunity at the 2005 Hearing to prove that Baxter intended to hide an illegal tax scheme, it failed to do so. Criminal punishment is not imposed on a person for mistakes or misunderstandings, or for being duped. *But see United States v. Griggs*, 2009 WL 1767269, at *1 (7th Cir. June 24, 2009) (recognizing that "avoidance behavior is itself evidence of guilty knowledge" in case where defendant "made efforts to avoid learning of her husband's [Ponzi] scheme"). Baxter was duped by the Aegis Trust System into believing it was legal, as this court found on April 27, 2006. (Dkt. No. 54 at 6 ("The evidence at the hearing held by the court establishes that Baxter was gullible like hundreds of other gullible people who were duped by Aegis and 'who bought into the legitimacy of the Aegis system' according to the testimony of

Special Agent Umali.  (Tr. at pg. 154).  It was Baxter's gullibility, not greed, that guided her actions as to the Aegis system.").)  A credible defense argument could have been made that none or only a small part of the $576,000 should be attributable to Baxter for sentencing purposes.

Moreover, there is no evidence that Baxter herself was qualified to assess the amount of tax loss properly attributable to her conduct for the purpose of her criminal case.  Although Baxter was a CPA, she was not in a position to understand the legal ramifications of the resultant steps taken or omitted by the IRS and its auditors in connection with the audit of her clients, or the effect of the tax-loss figure on her sentencing.  Rather, the court finds that Baxter reasonably deferred to the opinion of her criminal defense attorneys regarding the application of the law to the facts of her case.

Because the court has found that Baxter's criminal defense counsel unreasonably failed to retain an expert to assess the appropriate tax-loss amount attributable to Baxter, and because Baxter reasonably relied on her attorneys' advice on this matter in entering the Plea Agreement, the court is persuaded that any potential inference regarding Baxter's criminal responsibility for the $576,000 tax loss based on Baxter's statements in the Plea Agreement, at her plea hearing, or in the PSR should be set aside.  The court finds that those statements are not evidence of the appropriate tax-loss figure and that they do not preclude a finding of prejudice in this case on this point.

This court was unaware in sentencing Baxter that Mr. Spielfogel had done no analysis of the $576,000 tax-loss figure and had, in fact, prejudged the $576,000 to be the tax-loss amount for which Baxter was responsible.  The Seventh Circuit in 2008 reversed a sentence, and remanded for re-sentencing, where the district judge had prejudged the tax loss attributable to a

tax preparer without adequately hearing from counsel. *Schroeder*, 536 F.3d at 753. The Seventh Circuit held that the district court's prejudging "the tax loss issue undermined the fairness of Schroeder's hearing." *Id.*

Here, because Baxter's criminal defense counsel, Mr. Spielfogel, prejudged the tax loss criminally attributed to Baxter without adequate tax-expert examination, the fairness of Baxter's sentencing was undermined by her defense counsels' failure to properly apprise the court of the true composition of the $576,000 tax-loss figure, to which defense counsel had agreed. Mr. Spielfogel also failed to tell the court that the $576,000 was a part of the more than $5 million tax loss that the court had found the government failed to prove by a preponderance of the evidence was attributable to Baxter.

As discussed above, Baxter's criminal defense counsels' conduct of allowing the government to attribute to Baxter for criminal sentencing purposes the $576,000 tax loss, which was created by accounting transactions Baxter believed were lawful at the time of the crime, without proper analysis by a criminal tax expert was objectively not reasonable. Yet, that is what Baxter's defense counsel did at Baxter's plea negotiations and again at her sentencing. Mr. Spielfogel testified at the 2008 Hearing that, because of the Plea Agreement and his own opinion that the $576,000 was "the actual loss that existed in the case[,] . . . there was no way in the world you would even think to go and get another expert." (2008 Hearing Tr. 261:8-12.) This approach constituted deficient performance by Baxter's counsel.

Because this court is in the unique position of knowing the persuasive factors on which this court relied in imposing Baxter's two-year sentence, and knowing that the more than one-half of a million dollar tax-loss figure had a significant influence on the court's decision in

sentencing Baxter, the evidence which has been presented now, of which the court was unaware at the time of Baxter's sentencing, is "sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, of the plea bargaining and sentencing proceedings.

## CONCLUSION

To meet the objective standard of reasonableness, it is essential for criminal defense counsel to recognize that certain criminal cases require the retention of an expert. Criminal tax cases involving seemingly legitimate, sophisticated tax schemes, like the Aegis Trust System in Baxter's criminal case, are among the types of cases where it is necessary that criminal defense counsel retain the assistance of a tax expert before any critical stages of the defendant's criminal case occur. Otherwise, the defense may be adversely affected, as occurred in Baxter's criminal case.

The performance of Baxter's criminal defense counsel, Mr. Keith Spielfogel and Mr. James Montgomery, fell below the *Strickland* objective standard of reasonableness because they did not analyze or present the mitigating facts and arguments a tax expert's testimony would have assisted them in doing to reduce the tax-loss figure the court used in sentencing Baxter. The evidence also establishes that Baxter was prejudiced by her criminal defense attorneys' constitutionally deficient performance. It undermined the court's confidence in the fairness of the plea negotiations, the sentencing proceeding, and the sentence imposed in Baxter's case. The court believes that had the facts and analysis that have now been presented by Baxter's tax expert, who was retained by her new counsel after her sentencing, been presented to the court prior to Baxter's 2006 sentencing, the court would have imposed a lower sentence.

The four issues identified in this court's January 18, 2009 Order, (Dkt. No. 14), setting the 2008 Hearing, were answered by the evidence presented in the 2008 Hearing as follows:

1. Baxter's criminal defense attorneys failed to object to the $576,000 tax-loss amount used in sentencing Baxter because they had not obtained a tax expert's advice that would have apprised them of the mitigating facts and arguments to be presented in support of an objection to the $576,000 tax-loss figure at both the plea bargaining and sentencing phases of Baxter's criminal case;

2. Baxter's criminal defense attorneys took insufficient action to investigate the appropriate calculation of the criminal tax loss attributable to Baxter for her 1997 crime;

3. A non-government tax expert would have and did conclude that the government's proffered $576,000 figure was improperly calculated and erroneous when applied to Baxter's criminal conduct for sentencing purposes; and

4. Baxter's criminal defense attorneys would have proven a tax-loss figure sufficiently lower than $576,000 to change the court's determination of Baxter's sentencing guidelines range.

Baxter's §2255 Motion is granted. Baxter's sentence imposed by this court in Case No. 04 CR 371 on May 24, 2006 is vacated. The case is set for status hearing on July 23, 2009 at 10:00 a.m. to set further dates in Baxter's criminal case, 04 CR 371, including the date for Baxter's resentencing.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: June 25, 2009